## Joseph Vercler and Mrs. J. Vercler v. John Jansen et al., Copartners, etc.

1. HUSBAND AND WIFE—*Error to Preclude Both from Testifying Where They Are Sued Jointly.*—In an action where husband and wife are made joint defendants it is error to preclude both from testifying in their own behalf, upon the theory that the testimony of one may inure to the benefit of the other.

2. FAMILY EXPENSES—*What Are, a Question of Fact for the Jury.*— Whether a piano kept and used in a family by the members thereof is in law a family expense, is a question of fact for the determination of the jury, under proper instructions from the court.

3. SAME—*What Are, Depends upon Circumstances.*—Whether a particular article is to be classified as a family expense depends very much upon its use and the circumstances of the case.

Assumpsit, upon a promissory note. Appeal from the Circuit Court of Livingston County; the Hon. GEORGE W. PATTON, Judge, presiding. Heard in this court at the April term, 1901. Reversed and remanded. Opinion filed July 12, 1901.

O. W. BATRUM and RAY BLASDEL, attorneys for appellants.

NORTON & WINKLER and R. R. WALLACE, attorneys for appellees.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was a suit in assumpsit by appellees, partners, dealers in pianos and organs, against appellants, who are husband and wife. The declaration contained a count on a note given by the wife to appellees by which they charge that the husband was also bound as a family expense, and also the common counts. There was a plea of the general issue, and notice that thereunder appellants would insist that the written instrument declared on was never signed or assented to by Joseph Vercler and that the signature of Mrs. Vercler was obtained by fraud and circumvention. On the trial, appellees sought to hold the husband responsible for the payment of the price of the piano, for which the note was claimed to have been given, by virtue of section 15, chapter 68, Rev. Stat., which provides that "the expenses of the

family and of the education of the children shall be charge-able upon the property of both husband and wife, or either of them, in favor of creditors therefor and in relation thereto, they may be sued jointly or separately." There was a trial by jury and a verdict in favor of appellees for $365, and a new trial having been overruled, judgment was entered upon the verdict.

It appears from the evidence that in June, 1900, Kessling, an agent of appellees, induced Mrs. Vercler to permit him to place one of their pianos in the house of appellants on trial; that the next day Simpson and Thom, two other agents of the firm, took the piano out and put it in the house. On June 29th Simpson and Kessling went to the house again, remaining between four and five hours, leaving about five o'clock P. M. Before leaving, Mrs. Vercler, at the solicitation of Kessling, signed the note declared upon in this case, by which she promised to pay appellees the sum of $365, of which $65 was to be paid by the delivery of an organ, and the balance, $300, in cash, on or before July 29, 1900. About a week later Simpson went back for the organ and Mrs. Vercler refused to let him have it. This suit was brought in August following, for the full amount named in the note, to be paid in cash and by the organ. The judgment covered both sums and was against both appellants.

On the trial Simpson and Thom both testified that appellant Joseph Vercler told them, at the time they took the piano out to his house, that if his wife bought the piano he would pay for it. Simpson and Kessling also testified as to the various conversations with and statements made by Mrs. Vercler. Mrs. Vercler denied much that was sworn to by Simpson and Kessler and testified that Kessler told her the paper, which afterward turned out to be the note in question, was simply a memorandum showing that the piano had been left there and that it was not a note; that she did not buy the piano, but refused to do so until she could have it tested by a music teacher of her acquaintance. When appellant Joseph Vercler offered to testify in the case, coun-

sel for appellees objected on the ground that being the husband of the co-defendant, Mrs. Vercler, he was incapacitated from testifying by law. The court announced that under the authority of Hyman et al. v. Harding, 162 Ill. 357, Mr. Vercler was an incompetent witness and he was not permitted to testify. Thereupon appellees' counsel entered a motion to exclude the testimony of Mrs. Vercler on the same ground and the court sustained the motion, excluded her testimony and instructed the jury to disregard it. Appellants then entered a motion to exclude the testimony of appellees' witnesses showing any statements made by Mrs. Vercler at the time of the signing of the written instrument, and prior thereto, but this motion was overruled by the court. By this ruling of the court the two defendants in the case were absolutely precluded from testifying in their own behalf, upon the theory that the testimony of each might inure to the benefit of the other. If the rule laid down by the court below in this case were to be followed, all that would be necessary to prevent a married man from testifying in a civil case in his own behalf, would be to join his wife with him as a co-defendant. It is evident that such a rule would be very unjust and would open a wide door to fraud.

In the case of Hyman et al. v. Harding, *supra*, it was sought by appellants to charge the cost of resetting a ring of the wife, against the husband and wife both, as an item of family expenses. Upon the trial, Mrs. Harding, who was co-defendant with her husband, was permitted to testify against her husband, over his objection, the object of the testimony being to show that the ring was a wedding ring and that preservation of the same fell under a different class of expense from the purchase of an ordinary ring, and thus a charge against the husband. She did not seek to testify in her own behalf and there was nothing in her testimony which tended to exonerate her from the debt. The court therefore held that the testimony was incompetent and erroneously admitted.

In the case of Kelly v. Hale, 59 Ill. App. 568, which was a

Vercler v. Jansen.

suit against a husband and wife on a joint contract, it is said in the opinion delivered by the court: " The only question of law material to notice is the competency of Mary Hale, wife of Thomas, as a witness. She was joint maker of the note sued on and a party defendant, hence she was a competent witness in her own behalf." In this case the court should have permitted each defendant to have testified in his or her own behalf. It was peculiarly unjust to permit witnesses for appellees to testify as to conversations with each of the appellants at times when the other was not present and then to refuse to allow that appellant to come upon the witness stand and deny such conversation.

It is a matter of serious doubt as to whether or not the piano in question was such an expense of the family as to warrant the price of the same in being charged against the husband, under a contract made alone with the wife, and it may be proper to call attention to the fact that in the agreement signed by Mrs. Vercler and presented to her by agents of appellees, it is expressly provided "that said instrument is no part of the necessary household goods of the subscriber."

The court instructed the jury that " a piano kept and used in a family by members thereof, is in law a family expense." Many expenditures may contribute directly or indirectly to the comfort, convenience and welfare of the family which are not properly included in the term "family expenses." Whether a particular article should be classed as a family expense or not, depends very much upon the circumstances of the case. VonPlaten v. Krueger, 11 Ill. App. 627.

It was then a question of fact for the jury to determine, under proper instructions, whether or not the piano in controversy was a family expense.

The fourteenth instruction given for appellees told the jury that under the issues in the case it was immaterial what the piano was worth or what its condition was. This instruction was, under the circumstances of the case, improper, and should not have been given.

For the reasons above given the judgment will be reversed and the cause remanded.