Harvey Isley, Administrator of Estate of Leo Isley, Deceased, Appellant, v. Fred R. McClandish, Appellee.

Opinion filed March 13, 1939.

ALBERT E. ISLEY and KASSERMAN & KASSERMAN, all of Newton, for appellant.

MILO D. YELVINGTON, of Newton, and PARKER, BAUER & PARKER, of Effingham, for appellee.

MR. JUSTICE STONE delivered the opinion of the court. This is an appeal by Harvey Isley, administrator of the estate of Leo Isley, deceased, plaintiff, from a judgment in his favor for the death of his intestate, a 7-year-old child, and against Fred R. McClandish, defendant. The judgment on the verdict in the plaintiff's favor was in the sum of $300. Plaintiff, appellant, complains of the inadequacy of the damages, of evidence said to be improperly admitted, and of instructions said to be improperly refused.

The evidence showed that the injury occurred when defendant's car ran over plaintiff's intestate on a straight road which ran alongside the farm of Harvey Isley, at the point where the driveway from the barnyard of the Isley farm joined the road. The road was

well traveled, and had a beaten track some 8 or 9 feet wide. The right of way from fence to fence was 42 feet. There was a ditch between the fence and the well traveled portion of the road.

Plaintiff's intestate, Leo Isley, was in the road somewhere between the ditch and the well traveled portion. Clara Belle Isley, the only eyewitness to the boy's position immediately prior to the accident, was unable to give his exact position but stated that he was "pretty close" to the beaten track. She was unable to state what part of the defendant's car came in contact with the boy. She stated that she and her brother had been playing in the barn lot; that he had been out on the road one time shortly before the car came and then started toward the road again.

Harvey Isley, the father of the intestate, Leo Isley, was working on a hayrack in the field about 80 feet from the scene of the accident. There was nothing to obstruct his view of his son except the 10-year-old daughter, Clara Belle Isley, who was playing with the boy just before the accident. Harvey Isley noticed the car prior to the accident and states that it was traveling at a moderate rate of speed. He did not see the accident. He had looked down the road to see if it was clear, or whether the children were in the road. He did not see them "and couldn't tell but what the road was clear."

The accident occurred at 5:45 p. m. on September 6, 1937. The sun was still shining, about 30 minutes high.

The defendant testified that he was driving about 25 miles per hour by the Isley farm. As he was going by the home a little boy pulling a wagon suddenly appeared at his left-front fender. It was a fraction of a second from the time he saw the boy until the fender struck the boy or the boy struck the fender. Defendant stopped his car within 20 feet. Defendant stated that his car was in the beaten track.

There was some testimony by other witnesses to the effect that the children were accustomed to playing in the road. Two witnesses said they had stopped their car in the road to avoid hitting the children. A third witness said he had seen Leo Isley playing in the road. The defendant was permitted to testify that Mr. Harvey Isley said at the time of the accident, "If I had only hired a guard to guard these children." Another witness was permitted to testify that Mrs. Isley said at the scene of the accident, "Harve, I have expected something like this for a long time. I thought it might be the stock or the children, you know though, we have let the children grow up in the road."

It is not clear whether the boy walked or ran into the car or whether the car hit him. There is nothing in the evidence to show how long the boy was on the road before the accident, and consequently it does not appear that he had been there for a sufficient length of time for one driving a car to see him. The evidence does show that the boy's father, who, at a distance of 80 feet from the accident, glanced up and down the road, did not see him.

Plaintiff complains of the admission of evidence with respect to the habits of plaintiff's intestate, Leo Isley. The testimony with respect to the boy playing in the road and the admissions of the next of kin with respect to the same subject matter were undoubtedly introduced for the purpose of showing contributory negligence on the part of the next of kin. The rule is well established in this State that contributory negligence on the part of the next of kin will bar recovery by the administrator on behalf of the next of kin. *Thomas v. Anthony,* 179 Ill. App. 463; *Follett v. Illinois C. R. Co.,* 288 Ill. 506; *Ohnesorge v. Chicago City R. Co.,* 259 Ill. 424. We think it was proper for the jury to consider whether action of parents in permitting a 7-year-old child to play in a public road constituted negligence which contributed to the injury.

Plaintiff complains of certain instructions refused by the court. In substance the instructions charged that it was the duty of the driver to keep a lookout for persons on the highway, to anticipate the presence of others on the highway and to keep his machine under such control as would enable him to avoid injury to others on the highway using proper care and caution. A great deal of discretion as to form of instructions must be left to the trial court. The trial court may have believed that the instructions unduly emphasized the duties of the defendant with respect to maintaining the car under such control that he could stop it and unduly minimized defenses which the evidence in this case might warrant. There is no evidence that the child was in view at a time when the defendant's car might have been controlled to avoid the accident. The record is barren of evidence as to the circumstances of the impact. While we find no major defect in the rule set forth in the instructions we cannot say that their refusal was reversible error in this case.

The most serious contention of the plaintiff and the one he relies most heavily on is that the trial court erred in refusing to grant a new trial for the reason that the damages awarded were inadequate.

It is true that courts have permitted large verdicts to stand in cases of wrongful death to minor children. It is also true that verdicts have been set aside for inadequacy of damages awarded. The clearest principle that can be derived from the cases on the subject of inadequate and excessive damages is that the courts are very slow to interfere with the judgment of the jury in such matters. A difficult question would be presented if we were compelled to say whether the jury were demonstrably wrong in concluding that the loss of this 7-year-old child, taking into consideration the expense of keeping the child, would be no greater than $300. However, other considerations presented

by this record make it unnecessary for us to determine that question.

At common law, verdicts could not be set aside for insufficiency of damages awarded by the jury. *Hackett v. Pratt,* 52 Ill. App. 346; *Belles v. Bloomington & N. Ry. Electric & Heating Co.,* 130 Ill. App. 263. Now the general rule is that a verdict will not be set aside and a new trial granted for inadequacy of damages unless it is clear that injustice has been done. *Hackett v. Pratt, supra; Bolles v. Bloomington & N. Ry. Electric & Heating Co., supra.* A new trial will be granted where nominal damages are awarded in place of substantial damages. A new trial will also be granted where the award of damages is so small as to make it wholly inconsistent with a verdict of guilt, if the verdict of guilt is proper. In cases where the damages are very small the court will look to the merits of the plaintiff's case and will not declare a new trial unless such action would work substantial justice. *Hackett v. Pratt, supra; Bolles v. Bloomington & N. Ry. Electric & Heating Co., supra; O'Malley v. Chicago City Ry.,* 33 Ill. App. 354, also reported in 30 Ill. App. 309; *Scott v. O'Hair,* 188 Ill. App. 26.

In *O'Malley v. Chicago City Ry., supra,* the principle involved is well stated, as follows:

"It may be conceded that the action of the jury was inconsistent, but the concession would furnish no consistent reason for inconsistency in the action of the court. If this case had come here with the reasons of the Judge of the Superior Court for denying the new trial, stating that he would grant it on the authority of Peaslee v. Glass, 61 Ill. 94, if the defendant would apply for it, but that on the application of the plaintiff he could not grant it, as she already had more than she was entitled to, could this court, which as to verdicts, has authority only to correct errors of the court, say that such decision was in error? And that is

what this record, by fair inferences, says. A plaintiff not entitled to recover at all, has no right for any reason to have a verdict for the defendant set aside. Garland v. C. & N. W., 8 Ill. App. 571; nor one in his own or her own favor, because the damages awarded are less than the pecuniary injury. Hubbard v. Mason City, 64 Iowa 245.''

We have carefully reviewed the evidence presented on behalf of the plaintiff. There is no evidence of negligent conduct on the part of the defendant except such as can be obtained from inferences which are highly questionable. It would be necessary to infer that the car struck the child rather than that the child ran into the car, the record being barren of proof on the subject. It would be necessary to infer that the child was in a position to be seen for a sufficient time to enable the defendant to bring his car under control. The record does not warrant that inference. In fact the evidence shows that the father looked to see if the road was clear and did not see the child. To permit a verdict of guilt to stand as against objection of the defendant would in effect require the defendant to prove freedom from negligence rather than to require the plaintiff to prove negligence on the part of the defendant.

The defendant has not asked for relief from this judgment. We are not directly called upon to decide whether the facts present a proper case for the jury. We are asked by the plaintiff to set aside the verdict and judgment as contrary to law and the manifest weight of the evidence. For the reasons set forth we feel that substantial justice would not be accomplished by such action.

The judgment of the circuit court of Jasper county will therefore be affirmed.

*Affirmed.*